ISAAC P. BAKER, Appellant, v. A. P. LENHART, Individually and as President of the Board of City Commissioners of the City of Bismarck, and H. A. Thompson, J. P. French, J. A. Larson and C. W. Henzler, Individually and as City Commissioners of the City of Bismarck, Respondents.

(195 N. W. 16.)

**Municipal corporations — findings of fact by city commission, on hearing to disconnect territory, not reviewable by certiorari.**

The findings of fact made by a city commission upon the hearing of a

Note.—Proceedings reviewable by certiorari, 5 R. C. L. 258; 4 R. C. L. Supp. 319.

petition to disconnect territory from the city, under chapter 32 of the Laws of 1921, may not be reviewed in a certiorari proceeding.

Opinion filed December 30, 1922.   On rehearing September 5, 1923.

Certiorari, 11 C. J. § 363 p. 203 n. 66.  Constitutional Law, 12 C. J. § 387 p. 883 n. 98.   Municipal Corporations, 28 Cyc. p. 209 n. 7.

Appeal from the District Court of Burleigh County, *Nuessle*, J. Affirmed.

*Benton Baker*, for appellant.

"This proceeding for a writ of certiorari is a proper proceeding for the relief demanded."  Comp. Laws 1913, § 8445; State ex rel. Mayo v. Thursby-Butte Special School Dist. (N. D.) 178 N. W. 787; State ex rel. Johnson v. Clark, 21 N. D. 516, 131 N. W. 715; Red River Brick Co. v. Grand Forks, 27 N. D. 8, 145 N. W. 725; Hieneman v. Alexandria, 32 S. D. 368, 143 N. W. 291; Pelletier v. Ashton, 12 S. D. 366, 81 N. W. 735; 11 C. J. 104; Public Service Co. v. Public Utility Comrs. 87 N. J. L. 597, L.R.A.1918A, 421.

"Failure to perform a duty imposed by law constitutes an excess of jurisdiction of the council and renders the action of the council reviewable by a writ of certiorari."  Younger v. Santa Cruz Sup. Ct. 136 Cal. 687, 69 Pac. 485; McClatchey v. Sacramento Sup. Ct. 119 Cal. 413, 51 Pac. 696, 39 L.R.A. 691; 11 C. J. 94.

"This power of increase and diminution of municipal territory is plenary, inherent, and discretionary in the legislature, and, when duly exercised cannot be revised by the courts."  28 Cyc. 195, note 8.

"The question as to whether the power conferred upon the city council has been legally exercised, whether the statute under which it acts is constitutional, what the effect of any irregularities or omissions in pursuing the method prescribed by the statute may be, and other similar questions, are for judicial determination."  Red River Brick Co. v. Grand Forks, 27 N. D. 8, 145 N. W. 725.

The city commission is not authorized to determine by the exercise of its own judgment or discretion whether it is good or bad policy to disconnect the territory.  The legislature has not seen proper to clothe the commission with such discretionary power, but has determined that the existence of the facts stated settles the question as to the advisabil-

ity of the disconnection. Munter v. Tracy (Minn.) 116 N. W. 924; Glaspell v. Jamestown, 11 N. D. 90, 88 N. W. 1023.

The presumption is in favor of the constitutionality of a statute. Constitutional Law, 6 R. C. L. 97–100.

"It is a firmly established principle that a legislature has power at all times to legislate in respect to public and governmental matters, notwithstanding prior legislation on the same subject." Municipal Corporations, 19 R. C. L. 731.

The constitutionality of an act of the legislature can only be questioned by one who is affected thereby. Constitutional Law, 6 R. C. L. 95, 96.

*H. F. O'Hare* for respondents.

"Decisions made by a governing body in the exercise of its legislative functions or of discretionary powers conferred by charter or general law, are, in their nature, conclusive and not subject to review by the courts except in cases especially provided for by law." 28 Cyc. under heading Municipal Corporations, p. 347, ¶ 7.

"But the courts will exercise judicial supervision over the actions, decisions and proceedings of municipal bodies where they are in palpable violation of law, and will restrain their execution by appropriate process." Swan v. Cumberland, 8 Gill (Md.) 150; Carr v. Augusta, 124 Ga. 116, 52 S. E. 300; Hagerty v. Shedd, 75 N. H. 393, 74 Atl. 1055; Palmberg v. Kinney, 65 Or. 220, 132 Pac. 538; Forney v. Mounger (Tex. Civ. App.) 210 S. W. 240.

"Where a city consisted of two parts connected by a strip about two miles long, the court could not, under Pol. Code, §§ 1509–1511–1512, authorizing the exclusion of territory upon the boundaries of the city, exclude a tract of land extending clear across the connecting strip and thereby separate the territory of the city in two noncontiguous parts." 34 S. D. 69, 147 N. W. 91.

PER CURIAM. This is a companion case to that of Lincoln Addition Improvement Company v. Lenhart, et al. It involves a petition to disconnect the south half (S½) of section five (5), from the city of Bismarck. The petition was presented to the city commission for action, under chapter 32 of the Laws of 1921, and a hearing was conducted thereon. After the hearing, the commission found that the

lands sought to be excluded were bounded on three sides, and partially on the fourth side, by lands lying wholly within the city limits, and in this proceeding the court is asked to review such finding. The statute provides for no appeal, and neither does it provide for any method of reviewing the determination of facts made in such matters by the city commission. On the contrary, the only hearing that is provided for, upon a petition to disconnect territory from a city, is a hearing by the city council, or commission. Laws 1921, chap. 32.

It is the settled law in this state that questions relating to the change of boundaries of cities are legislative questions. Glaspell v. James-town, 11 N. D. 86, 88 N. W. 1023. See also 19 R. C. L. p. 732. By chapter 32, Laws 1921, the legislature fixed and specified all the conditions and facts upon which the exclusion of certain territory from a city should depend, and constituted the city council, or commission, the body to ascertain and determine the existence of these facts and conditions. No provision is made for an appeal from the decision of the city council and under well-settled rules of law applicable to other boards empowered to determine facts the decision of the city council (or commission) as to the facts is, in the absence of fraud, final and conclusive upon the courts. See State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191. See also State ex rel. Little v. Langlie, 5 N. D. 594, 600, 601, 32 L.R.A. 723, 67 N. W. 958; Greenfield School Dist. v. Hannaford Special School Dist. 20 N. D. 393, 397, 127 N. W. 499.

As already stated, in this case a review is sought by certiorari. Under our law "a writ of certiorari may be granted by the supreme and district courts, when inferior courts, officers, boards or tribunals have exceeded their jurisdiction and there is no appeal, nor, in the judgment of the court, any other plain, speedy and adequate remedy, and also when in the judgment of the court it is deemed necessary to prevent miscarriage of justice." Section 8445, Comp. Laws, as amended by chapter 76, Laws 1919. And "the review upon this writ cannot be extended further than to determine whether the inferior court, tribunal, board or officer has regularly pursued the authority of such court, tribunal, board or officer." Comp. Laws, 1913, § 8453. In construing similar provisions the supreme court of California has ruled that this latter section, which prescribes the extent of the review, has substan-

tially the same meaning as the phrase in § 8445, supra, authorizing the court to inquire whether the "inferior courts, officers, or tribunals have exceeded their jurisdiction," and that under neither section can anything but jurisdiction be inquired into.   See Central P. R. Co. v. Board of Equalization, 43 Cal. 365.   See also Farmers' and M. Bank v. Board of Equalization, 97 Cal. 318, 32 Pac. 312; Security Sav. Bank & T. Co. v. Los Angeles County, 4 Cal. (Unrep.) 222, 34 Pac. 437; Johnston v. Glenn County, 104 Cal. 390, 37 Pac. 1046; Fickert v. Zemansky, 176 Cal. 443, 168 Pac. 891; Henshaw v. Butte County, 19 Cal. 150; People ex rel. Whitney v. San Francisco Fire Dept. 14 Cal. 499.

Corpus Juris (11 C. J. 103) says:

"In most of the western states, the writ (certiorari) lies only when there is a want or excess of jurisdiction in the proceeding complained of. . . .   This rule that want or excess of jurisdiction is the only ground prevails in Arizona, California, Colorado, Idaho, Montana, Nevada, North Dakota, Oklahoma, the Philippines, South Dakota, and Utah."

In People ex rel. Whitney v. San Francisco Fire Dept., supra, the California court said:

"We have already seen that the writ can be granted only where the jurisdiction of the inferior tribunal has been exceeded, and   .   .   . it is clear that the courts are confined to the determination of the question of jurisdiction.   Beyond this, they have no right or authority to go; and they have nothing whatever to do with the proceedings before the inferior tribunal, except so far as an examination of such proceedings is necessary for the determination of this question.   .   .   .   It brings up no issue of law or fact not involved in the question of jurisdiction.   Under no circumstances can the review be extended to the merits.   Upon every question, except the mere question of power, the action of the inferior tribunal is final and conclusive."

There can be no doubt but that the question whether the territory sought to be detached should or should not be detached was one properly within the jurisdiction of the city commission.   And there is no question but that the city commission afforded the petitioner a full hearing, and that after such hearing they made a determination.   The petitioner invoked the jurisdiction of the commission, and attended, and

participated in, the hearing. And it would seem that he is not now in position to invoke the aid of a writ of certiorari, which reviews only questions of jurisdiction. As was said by this court in Albrecht v. Zimmerly, 23 N. D. 337, 344, 136 N. W. 242:

"With jurisdiction thereby invoked by defendants, they have no standing in this court on an application for certiorari in which they must assert and establish as a prerequisite of their right thereto the absence or want of jurisdiction of the lower court over the same matter. They cannot at the same time in the same action invoke and establish jurisdiction and then deny its legal effect."

Jurisdiction relates to the power of the tribunal, and not to the rights of the parties. Dahlgren v. Superior Ct. 8 Cal. App. 622, 97 Pac. 681. "The test of the jurisdiction of a court is whether or not it had power to enter upon the inquiry; not whether its conclusion in the course of it is right or wrong." Lake County v. Platt, 25 C. C. A. 87, 49 U. S. App. 216, 79 Fed. 567. "Excess of jurisdiction is to be distinguished from errors of law or of fact committed by the inferior tribunal within the limits of its jurisdiction. Such an error does not constitute an excess of jurisdiction. If a court acts in the exercise of its lawful jurisdiction, and not in excess of such jurisdiction, the mere fact that its conclusion is wrong does not make its action an excess of jurisdiction." 4 Cal. Jur. pp. 1036, 1037.

The sole contention of the petitioner in this case is that the order of the city council is contrary to the evidence. It seems clear that under a statute like ours the court may not consider the sufficiency of the evidence or review the findings made by the inferior tribunal except for the sole purpose of determining whether such tribunal has exceeded its jurisdiction. See Comp. Laws, 1913, §§ 8445–8453; State ex rel. Mayo v. Thursby-Butte Special School Dist. 45 N. D. 555, 178 N. W. 787. See also 11 C. J. pp. 202, 203. In other words, "the reviewing court has nothing to do with the proceedings before the inferior tribunal, except so far as an examination of such proceedings is necessary for the determination of the question of its jurisdiction. If such tribunal has regularly pursued its authority, the inquiry stops. Errors of law committed by the inferior court in the exercise of its authority cannot be considered; and in such case, no matter how erroneous the decision may be, even on the face of the record, the

reviewing court has no power to change, annul or reverse it in a proceeding in certiorari." 4 Cal. Jur. pp. 1106, 1107.

For these reasons, we are of the opinion that the order appealed .from must be affirmed. It is so ordered.

BIRDZELL, Ch. J., and CHRISTIANSON and ROBINSON, JJ., concur.

## Statement.

BRONSON, J. (dissenting). Plaintiff seeks, through certiorari, to exclude certain lands from the city of Bismarck. The facts are:—Plaintiff petitioned the city commission of Bismarck to exclude from the city the S.½, sec. 5, twp. 138, rge. 80. In the petition and affidavit, he avers that such land is wholly unplatted; that no municipal sewers, water mains, pavements, sidewalks or other city improvements have been constructed upon the same; that such lands are and always have been used exclusively for agricultural purposes; that there are no legal voters residing upon the lands; that he has been the owner thereof in fee for more than three years. In May, 1922, the city commission had a hearing upon the petition. Evidence in the form of affidavits was received. The city engineer, in an affidavit, stated that the western boundary of the land sought to be excluded lay in the Missouri river and that the western boundary of the city of Bismarck ran to the center of the main channel of the Missouri river. Proof also was made of the present bonded and improvement indebtedness of the city. The facts, alleged or stated, in plaintiff's petition and affidavit are not controverted. A map, prepared by the city engineer and showing the city limits, was introduced. The city commission found that the lands sought to be excluded were bounded fully on three sides and partially on the fourth side by lands lying wholly within the city limits. That there is a present bonded and improvement indebtedness of the city amounting to $201,500. That the petitioner had not paid nor offered to pay his just share of such bonded indebtedness for which the lands sought to be excluded stood as partial security; that the exclusion of such land will leave the southern boundary of the city in an unnatural and inconvenient form and manner. The petition was denied. In June, 1922, plaintiff initiated in district court pro-

ceedings in certiorari. An order to show cause was issued. The city commission made answer and return wherein the proceedings as above outlined were substantially alleged. After hearing, the district court made an order refusing a writ. Plaintiff has appealed.

## Opinion.

The material portion of chap. 32, Laws 1921, applicable, provides that when lands described in a petition bordering upon and within the limits of any incorporated city are wholly unplatted and no municipal sewers, water mains, pavements, sidewalks or other city improvements have been made or constructed therein, and this is made to appear upon the hearing of the petition by the city commission, it shall be the duty of the commission to disconnect and exclude such territory from the city.

A rough drawing, traced from the map offered by the city is attached:

It shows a portion of the city, the lands sought to be excluded, and the relation of the Missouri river and the present city limits to such land.

The undisputed facts are that the land, owned wholly by plaintiff, and sought to be excluded, has been and is devoted exclusively to agricultural purposes; there are no municipal improvements therein. No voters there reside. The southern boundary of the land coincides with the southern city limits. The western boundary of the land coincides with the western city limits. The court takes judicial notice that the Missouri river is navigable at the locus in quo. Through its navigation, trade, commerce, land settlement and improvement, and war, too, have spelled out a history, both national and state, for this and other states tributary thereto. If ownership in the bed of this variant and uncertain navigable stream is wanting in the plaintiff, where it traverses his land, the compensating factor, if any, is that he is a riparian owner and has riparian rights. Whatever rights the city has in such bed or in the waters flowing thereover, so far as the plaintiff's land is concerned, exists by virtue of the territorial jurisdiction and incident police powers, occasioned through the inclusion of plaintiff's land within the city limits. No questions of municipal wharves, docks, bridges, or other municipal improvements are concerned. As nature has given, so, from the record, it is now. Whatever comprises the south half of section five, such, owned by plaintiff, he seeks to have excluded. The western boundary of this land, whether it is in the river, or out of the river, is, according to the record, likewise, the western boundary of the city limits. If the city asserts that its jurisdiction extends to the center of the main channel of the river, as it may vary from day to day, sometimes greatly during the course of a day, it may be because that is self-sufficient, although its western city limits, since Territorial days have been the western boundary of Section Five. The statute does not exclude the detachment of streams situated within territory sought to be excluded. It follows, therefore, that the finding of the city commission that the land sought to be excluded is bounded fully on three sides and partially on the fourth side by lands lying wholly within the city limits, is not true. It has no facts to support it. The uncontroverted facts are that such land, so described, is bounded on only two sides by the city limits. The land is bordering upon and within the city limits. It is appropriate territory for exclusion. The city commission may not find that land is bounded on four sides by city limits, when in law and in fact it is

not, and thus, hide behind the rule that the court, in certiorari proceedings, will not review the commission's findings. Upon the facts, it was made the statutory duty of the commission to exclude the land sought to be excluded. It acted in excess of its jurisdiction when it pretended by a finding to deny a right which the statute created, and which by its exercise in such manner, gave to it a power and right which it did not possess. See Mogaard v. Robinson, 48 N. D. 859, 187 N. W. 142. The objection that the present bonded and improvement indebtedness of the city will suffer loss in the partial security afforded by the land sought to be excluded or that plaintiff has not offered to pay his share thereof, as represented by the burden assumed by such land, is without merit. It presents no valid constitutional objection to the legislative act.

The order should be reversed and the cause remanded for further proceedings.

GRACE, J., concurs.

## On petition for rehearing.

PER CURIAM. In this case a rehearing was ordered. Interim the filing of the former opinion and the reargument, there was a change in the membership of the court, Justices Grace and Robinson having retired from office on January 1, 1923, and being succeeded by Justices Johnson and Nuessle. Mr. Justice Nuessle being disqualified, Judge Burr, one of the judges of the Second judicial district was called to sit as a member of the court.

After reargument and reconsideration of the questions involved, we are entirely satisfied that the former opinion should be adhered to.

The statute relating to the exclusion of territory from a city reads:

"On petition, in writing, signed by not less than three fourths of the legal voters and by property owners of not less than three fourths in value of the property in any territory, within any incorporated city, town or village, and being upon the border and within the limits thereof, the city council of the city, or the board of trustees of the town or village, as the case may be, may disconnect and exclude such territory from such city, town or village; provided, that the provisions of

this section shall only apply to lands not laid out into city, town or village lots or blocks.

"Provided, further, that when the property or lands described in such petition bordering upon and within the limits of any such incorporated city, town or village are wholly unplatted, and no municipal sewers, watermains, pavements, sidewalks or other city, town or village improvements have been made or constructed therein, except as hereinafter provided, and this is made to appear upon the hearing upon such petition by the city council, commission or board of trustees of the town or village, as the case may be, it shall be the duty of the city council, commission or board of trustees to disconnect and exclude such territory from the city, town or village.

"And, provided further, that where a sewer outlet extends upon or over said unplatted lands, it shall be the duty of the city council, commission or board of trustees to disconnect and exclude such territory from such city, town or village." Laws 1921, chap. 32.

It will be noted that a proceeding for the exclusion of territory must be initiated by petition presented to the city council or commission. That body and that body alone is vested with authority to receive and act upon such petition. In other words, the city council or commission, is vested with power to hear evidence and draw conclusions therefrom. In making its determination the council, or commission, exercises powers judicial in their nature (Glaspell v. Jamestown, 11 N. D. 86, 88, 88 N. W. 1023; Mogaard v. Garrison, 47 N. D. 468, 182 N. W. 760), and it cannot be compelled by mandamus to decide the application in any particular way. Mogaard v. Garrison, supra.

Manifestly a city commission has power to deny as well as to grant a petition for the exclusion of territory. The power to entertain and hear a petition necessarily implies the power to deny it. It is true, the statute says that when certain facts exist the territory shall be excluded, but it vests the city commission, and it alone, with authority to ascertain whether the facts exist. In a sense there is a duty incumbent upon all boards and tribunals to decide a controversy only one way in all cases where the evidence is such that reasonable men can draw only one conclusion therefrom. That duty rests not only upon boards, but upon courts. Thus if the evidence in a case is such that

reasonable men in the exercise of reason and judgment can draw only one conclusion therefrom, it is the duty of the court in which the case is tried to decide the case in favor of the party who the law says is entitled to prevail. That is true whether the case is or is not submitted to a jury. If such case is submitted to the jury under proper instructions, it is the manifest duty of the jury to return a verdict in favor of the party who under the undisputed evidence is entitled to it; if the case is decided by the trial judge without a jury the same duty rests upon him; yet it will hardly be asserted that the failure of the jury or the trial judge to perform their duty in such cases constitutes an excess of jurisdiction. All will agree that it will constitute only an error of judgment. And error of judgment on the part of the tribunal authorized to hear and determine is neither want nor excess of jurisdiction. Hauser v. State, 33 Wis. 678; Arnold v. Booth, 14 Wis. 180; Patterson Land Co. v. Lynn, 44 N. D. 251, 254, 175 N. W. 212. See also in Ex parte Bigelow, 113 U. S. 328, 28 L. ed. 1005, 1006, 5 Sup. Ct. Rep. 542.

This is not a case where the city commission has proceeded without having before it a petition, or has acted upon a petition without affording the parties interested an opportunity to be heard. Nor is it a case where having been petitioned to inquire into and determine one matter, it has conducted an inquiry outside thereof and determined some question not within the inquiry it was asked to conduct. In this case the appellant appeared by counsel and was permitted to make whatever showing he desired to make. It is conceded that a full hearing was afforded. After such hearing the commission made a determination of the application on the merits thereof. The jurisdiction of the commission was not questioned. No evidence was adduced having any bearing on the question of jurisdiction. The appellant invoked the powers of the commission and presented a petition setting forth his claims regarding the lands which he asked to have excluded. He asked the commission to enter upon the inquiry as to whether such lands ought or ought not to be excluded. It acted upon his request. It entered upon the inquiry. It completed the inquiry and arrived at the conclusion that the facts were not such as appellant in his petition had asserted them to be. It found the facts to be such as not to bring the land sought to be excluded within the provisions

of the statute. It will be noted that the statute does not require the city council to preserve the evidence adduced upon the hearing. Nor is any provision made for a review of the action of the city council, or commission, by any other body or tribunal, although the legislature has made provision for such review in cases where it is sought to annex adjacent territory to cities. Laws 1916, chap. 68.

In the former opinion reference was made to certain California decisions, construing statutes quite similar to §§ 8445–8453, Comp. Laws, 1913. On re-argument attention was called to the decisions of the Supreme Court of California in McClatchy v. Superior Ct. 119 Cal. 419, 39 L.R.A. 691, 51 Pac. 696; Schwarz v. Superior Ct. 111 Cal. 106, 43 Pac. 580, and Younger v. Superior Ct. 136 Cal. 682, 69 Pac. 485, and it is asserted that the principles announced in these cases are contrary to the views expressed in the former opinion in this case. The contention is not well founded.

In the McClatchy Case the petitioner had been adjudged guilty of contempt. The record showed that he was refused an opportunity to present his defense in the trial court. In other words, he was denied an opportunity to be heard, and the supreme court of California held that he had been denied the due process guaranteed to him by the Constitution. In other words, the supreme court of California held the situation to be precisely the same as though judgment had been pronounced without notice of hearing or any opportunity of hearing at all. In concluding its opinion the court said:

"And, quoting from Galpin v. Page, 18 Wall. 350, 21 L. ed. 959, it is said: 'It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is justly administered.'

"These considerations make it manifest that petitioner at his trial in the court below was denied that 'due process of law' requisite to a valid conviction; and for that reason the order convicting him of contempt must be annulled.

"It is so ordered."

In the preceding portions of the opinion the court, among other things, said:

"It is contended by respondent that, even if the action of the court was wrong, it was error merely, which cannot be reviewed on certiorari; that the court having jurisdiction of the person and subject matter, the mere method in which it exercised such jurisdiction cannot be inquired into in this proceeding, which looks only to the question of jurisdiction. *If the premise were correct, the conclusion would undoubtedly follow.* But with the view that the action involved no more than mere error we cannot coincide. It was error, certainly, but it was more than that. It was a transgression of a fundamental right guaranteed to every citizen charged with an offense, or whose property is sought to be taken, of being heard before he is condemned to suffer injury. Any departure from those recognized and established requirements of law, however close the apparent adherence to mere form in method of procedure, which has the effect to deprive one of a constitutional right, is as much an excess of jurisdiction as where there exists an inceptive lack of power. 'The substance and not the shadow determines the validity of the exercise of the power.' Postal Teleg. Cable Co. v. Adams, 155 U. S. 689, 698, 39 L. ed. 311, 316, 5 Inters. Com. Rep. 1, 15 Sup. Ct. Rep. 260.

"While the writ of certiorari is not a writ of error, 'it is nevertheless,' as suggested in Schwarz v. Superior Ct. 111 Cal. 112, 43 Pac. 580, 'a means by which *the power of the court* in the premises can be inquired into; and for this purpose the review extends not only to the whole of the record of the court below, but even to the evidence itself, *when necessary to determine the jurisdictional fact.'*"

In Schwarz v. Superior Ct. the petitioner was adjudged guilty of contempt, the charge being that he had violated a certain injunctional order. The order in question contained certain provisions mandatory in character and other provisions prohibitory in character. An appeal had been taken to the supreme court and all the mandatory provisions were "stayed and suspended" pending the appeal, while the prohibitory provisions remained in force. 111 Cal. 106, 43 Pac. 581. The judgment of contempt was general in terms. That is, the judgment did not show whether the petitioner had been found guilty of and sentenced for having violated the mandatory or the prohibitory pro-

visions of the injunctional order. In other words, a situation was presented where it was necessary to examine the evidence in order to ascertain whether the Superior Court had found the defendant guilty of violating that portion of the injunctional order which was suspended by the appeal and had been withdrawn from its jurisdiction, or whether it had found him guilty of having violated provisions of the order unaffected by the appeal and which the Superior Court had power to enforce. The contention was advanced that on certiorari the Supreme Court was concluded by the findings in the judgment of contempt itself and could not go behind them. In answer to that contention, the court said:

"The objection that we are not at liberty to go beyond the recitals or findings in the judgment itself, in reviewing the action of the court below, is not well taken. While the writ of review is not a writ of error, and is not a means by which, as upon appeal, the mere manner of conducting the proceedings, the rulings of the court upon questions of evidence, and other matters within the jurisdiction, involving the merits, however erroneous they may be, can be reviewed, it is, nevertheless, a means by which *the power of the court in the premises can be inquired into;* and for this purpose the review extends, not only to the whole of the record of the court below, but even to the evidence itself, where necessary to determine the *jurisdictional fact.*"

In Younger v. Superior Ct. "a complaint in partition made the judge of the superior court a party defendant, and alleged that he claimed to have some interest in the land, but that he had no interest therein. After service of summons on the judge, without answering or appearing in the cause, *he, of his own motion, and without notice to any party,* caused an order to be made and entered striking the complaint from the files, reciting that the allegations therein as to him were false, deceitful and abusive of the process of the court, and made for the sole purpose of disqualifying him in the trial of the cause." 136 Cal. 682, 69 Pac. 485. The order was nonappealable, and there was no other plain, speedy or adequate remedy. 136 Cal. 682, 69 Pac. 487.

These California decisions need no further discussion. Clearly they are not authority for the proposition that the findings of the city commission may be set aside on the ground that they are without support in the evidence. On the contrary, these cases recognize that on

certiorari, "upon every question except *the mere question of power*, the action of the inferior court is final and conclusive" (Re Hughes, 159 Cal. 360, 113 Pac. 684) and the inquiry was so restricted. In the McClatchy and Younger Cases, a party was denied an opportunity to be heard. That is there was a denial of due process. And in the latter case the order was made by a judge who was a party to the cause. In the Schwarz Case a judgment of contempt was pronounced for the alleged violation of an order (which so far as the acts in question were concerned) was no longer within the jurisdiction of the superior court. No such condition exists in the case at bar. Here there was no denial of due process. There was no action on a matter which the city commission had no authority to determine. In the absence of statutory provision no territory can be excluded from a city. The legislature has made provision that territory may be excluded from a city upon application presented to the city council, or commission. The authority to entertain such an application and to determine whether the facts are such as to justify or require the exclusion of the territory is vested exclusively in the city council, or commission. In this case, the appellant presented an application to the board authorized by statute to receive it, notice was given of the hearing and full hearing afforded. The appellant was permitted to introduce any and all evidence he desired to offer, and fully present the matter to the city commission. There is no contention that he was in any manner prevented from having a full and complete hearing. On the contrary, it is conceded that such hearing was afforded. There is no complaint on the part of the appellant of any act on the part of the city council, until it made its decision on the merits. In other words, the sole complaint on the part of the appellant is directed at the determination which the city commission made on the merits of the application.

Certain language used by the supreme court of California in Roberts v. Police Ct. 185 Cal. 65, 195 Pac. 1053, seems quite applicable here. In that case the petitioner was convicted in the police court of the city and county of San Francisco of a public offense triable in that court. He appealed from the judgment of the police court to the superior court of said city and county, which under the laws of California was authorized to entertain and determine such an appeal upon a statement of the case settled by the police judge. 185 Cal. 67, 195 Pac.

1054. The superior court, after a hearing, made its order affirming the judgment of the police court. The petitioner then sought to have the proceedings reviewed on certiorari. In its opinion in the case, the supreme court of California said:

"Jurisdiction of the superior court to entertain and determine the appeal is not questioned. That jurisdiction was invoked by petitioner himself, who, within the time and in the manner required by law, took his appeal to such court from the judgment of the police court, and the statute gives to the court jurisdiction to entertain such an appeal when duly taken. The appeal was heard upon a statement of the case as required by law. The statute gives to such court the power, upon such appeal, to reverse the judgment of the police court and to grant a new trial, or to affirm the judgment of the police court. It must determine the appeal, reversing or affirming the judgment of the police court as it deems one or the other course proper in view of the matters shown by the statement of the case. Whichever it does it is acting in the exercise of its lawful jurisdiction, and not in excess of such jurisdiction. It has the same power to affirm in any case that it has to reverse, and the mere fact that its conclusion is wrong does not make its action an excess of its jurisdiction. In such case we have simply error in the exercise of jurisdiction. All that petitioner's contention amounts to in this regard is that the superior court should have reversed the judgment of the police court, and that it erred in affirming it. The substantial contention is that the statement of the case showed that the evidence on the trial in the police court was not sufficient to establish the guilt of the petitioner of the offense charged. If that be true, the superior court erred in affirming the judgment, but mere errors in the exercise of jurisdiction are not reviewable on certiorari. It seems superfluous to cite authorities in support of these well-settled propositions, but if authority be desired, it is to be found in the opinion of this court in Re Hughes, 159 Cal. 360, 113 Pac. 684. No ground appears, therefore, upon which the order of the superior court affirming the judgment of the police court may be here assailed.

"It may properly be noted that there is in fact no force in the claim of petitioner that the judgment of the police court was in excess of its jurisdiction. That claim is based on the same contention, insufficiency

of evidence to establish guilt of the offense charged. Assuming this contention to be well based, there was no lack of jurisdiction to convict the defendant. What we have said with regard to the superior court on this point is equally applicable here. Where a court is invested with jurisdiction to determine the question of the guilt or innocence of one charged with a public offense, as was the police court in this case, by the filing of the complaint and by acquiring jurisdiction over the person of the defendant, its determination on the question of guilt or innocence *whether based on sufficient evidence or not, is a determination arrived at in the exercise of its jurisdiction, and however erroneous it may be, it is not void for want of power in the court to render the decision.* Invested with the jurisdiction to determine the matter, the court has the power to determine it wrongly upon the evidence as well as correctly, and, under our law, the defendant's only remedy in the event of an incorrect decision is by appeal. On certiorari, as approvingly quoted in Matter of Hughes, supra, 'upon every question except the mere question of power, the action of the inferior tribunal is final and conclusive.' In such a case a claim of insufficiency of evidence to show guilt of the offense charged does not go to the jurisdiction. It has been said that 'an exception to the rule that the sufficiency of the evidence will not be reviewed is made when the question is whether jurisdictional facts, were or were not proved.' Stumpf v. San Luis Obispo County, 131 Cal. 364, 367, 82 Am. St. Rep. 350, 63 Pac. 663, that is, whether facts upon which the jurisdiction of a board or inferior tribunal depends were or were not proved. We have in our reports many decisions wherein this exception has been applied, the case in which this declaration was made being one, and the case of Thrasher v. Board of Medical Examiners, 44 Cal. App. 26, 185 Pac. 1006, relied on by petitioner, being another. But the exception has no application whatever to a tribunal invested with jurisdiction to try and determine a fact in issue, with reference to proof of that fact. In such case that fact is not what is known as a 'Jurisdictional fact.' It is the fact to be determined by the court having jurisdiction to determine it, and the determination of such court thereon is not void, however defective the evidence upon which it is based."

Attention has been called to the decisions of this court in Murphy v.

District Ct. 14 N. D. 542, 105 N. W. 728, 9 Ann. Cas. 170; Zinn v. District Ct. 17 N. D. 135, 114 N. W. 472, and Lowe v. District Ct. 48 N. D. 1, 181 N. W. 92, as bearing on the question of the extent of review afforded on certiorari. These cases all involved the exercise by this court of its constitutional power of "general superintending control over all inferior courts," and manifestly have no application in cases like this, where the writ of certiorari if available at all is issuable under § 8445, Comp. Laws, 1913.

The Constitution vests in the supreme court: (1) Appellate jurisdiction to decide finally all ordinary litigation (Atty. Gen. v. Chicago & N. W. R. Co. 35 Wis. 425, 518; State ex rel. Lemke v. District Ct. 49 N. D. 27, 186 N. W. 381, 386); (2) superintending jurisdiction over all other courts to control the course of ordinary litigation in them (Atty. Gen. v. Chicago & N. W. R. Co. and State ex rel. Lemke v. District Ct. supra) "where those courts are proceeding within their jurisdiction, but by mistake of law, or wilful disregard of it, are doing a gross injustice and there is no appeal or the remedy by appeal is inadequate" (State ex rel. Whiteside v. First Judicial Dist. Ct. 24 Mont. 539, 562, 63 Pac. 395); and (3) original jurisdiction of certain proceedings at law and in equity,—reserved for the use of the state itself when it appears to be necessary to vindicate, or protect its prerogatives or franchises, or the liberties of its people (State ex rel. Linde v. Taylor, 33 N. D. 76, 84, 85, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583; State ex rel. Steel v. Fabrick, 17 N. D. 532, 536, 117 N. W. 860).

The constitutional grant of superintending jurisdiction reads:

"The supreme court . . . shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law." N. D. Const. § 86.

In carrying out the constitutional direction to "prescribe by law" regulations and limitations for the exercise of the superintending jurisdiction the legislature enacted a law providing:—"The supreme court . . . in its superintending control over inferior courts may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction." Comp. Laws, 1913, § 7339. This statute was enacted in 1891 (Laws 1891, chap. 118) and is the only legislative enactment purporting to regulate the issuance of writs by

the supreme court in the exercise of its superintending jurisdiction. In other words, the legislative assembly has seen fit to place no limitations or restriction whatever upon the widest possible exercise of the power granted by the constitution. It will be noted that neither the constitution nor the statute purports to name the writs which the court may issue in the exercise of its superintending jurisdiction, or to prescribe the functions of any writ which may be issued. Hence, in the exercise of its superintending jurisdiction, the court not only may issue all common law writs applicable to superintending control over inferior courts, but, if the exigencies of the case so require it may "modify and enlarge the terms" of such writs, State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591, 51 L.R.A. 33, 79 N. W. 1081, or "failing adequate common law writs, the court might well devise new ones," Atty. Gen. v. Chicago & N. W. R. Co. 35 Wis. 425.

At common law, the writ of certiorari was used for two purposes: First, as an appellate proceeding for the re-examination of some action of an inferior tribunal; Second, as an auxiliary process to enable the court to obtain further information in respect to some matter already before it for adjudication. See 11 C. J. 89; 4 C. J. 500; 29 Cyc. 196. It is apparent that the certiorari may be used as an auxiliary process in aid of all three grants of jurisdiction vested in this court. It may be used in aid of the original jurisdiction to compel records to be certified here that become pertinent in a proceeding pending before this court. In the exercise of the superintending jurisdiction, certiorari may issue as a preliminary writ to compel the records of the inferior court to be certified up to this court, so that this court may act intelligently in the matter and determine whether some action has been taken justifying or requiring the exercise by this court of its superintending control over such inferior court, and, what the character of the writ, if any, to be issued by this court, should be. Such writ may also be issued to cause a record to be corrected or defects therein to be supplied in any appeal or proceeding pending before the court. See 4 C. J. 500. It is, we think, obvious that § 8445, Comp. Laws, 1913, was intended to prescribe the functions of certiorari as a writ of review, that is, where it was sought to be utilized for the purpose of re-examining the action of some inferior tribunal, board or officer; and that that section was not intended to apply in cases where

certiorari was used as an auxiliary process. Where it is so used, the question of excess of jurisdiction is not involved. Neither, we think, does § 8445, supra, applying to certiorari where it is invoked in aid of the superintending jurisdiction. Section 8445, Comp. Laws, 1913, became a part of the law of this jurisdiction long before the adoption of our constitution. Dak. Terr. Code Civ. Proc. 1877, § 685.

The distinction between certiorari as provided by § 8445, Comp. Laws, 1913, and certiorari when issued, under § 7339, Comp. Laws, 1913, in the exercise of the superintending jurisdiction has been repeatedly recognized by this court. Thus it will be noted that under the express terms of § 8445, a writ of certiorari as therein provided will issue only in cases where "inferior courts, officers, boards or tribunals have exceeded their jurisdiction and *there is no appeal,* nor, in the judgment of the court any other plain, speedy and adequate remedy." This court has repeatedly ruled that certiorari will not lie under § 8445, Comp. Laws, 1913, in any case where there is a remedy by appeal. See, Lewis v. Gallup, 5 N. D. 384, 67 N. W. 137; St. Paul M. & M. R. Co. v. Blakemore, 17 N. D. 67, 114 N. W. 730; Schafer v. District Ct. 21 N. D. 476, 131 N. W. 240; State ex rel. Brunette v. Pollock, 35 N. D. 430, 160 N. W. 511. In construing § 8445, supra, in St. Paul, M. & M. R. Co. v. Blakemore, supra, this court said: "It is apparent that the remedy by certiorari is not authorized in any case where there is a remedy by appeal. This statutory provision is so plain that its meaning is not open to question." 17 N. D. 73. This rule, however, does not apply in cases where certiorari is invoked in aid of the superintending jurisdiction. In such cases the writ is not necessarily barred because the action sought to be reviewed or controlled may be reviewed on appeal.

Where certiorari is invoked in aid of the superintending jurisdiction, if the exigencies of the case require, the writ may issue and appropriate action taken even though the action which it is sought to have corrected or annulled is in fact appealable. State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591, 51 L.R.A. 33, 79 N. W. 1081; State ex rel. Lemke v. District Ct. 49 N. D. 27, 186 N. W. 381, 398; State ex rel. Red River Brick Corp. v. District Ct. 24 N. D. 32, 33, 138 N. W. 990.

When this court is asked to exercise its superintending jurisdiction,

the writ of certiorari may be issued alone as a preliminary writ requiring the record of the inferior court to be certified up so as to enable this court to determine whether a case is presented requiring or justifying any action, and if so, what such action should be—State ex rel. Red River Brick Corp. v. District Ct. 24 N. D. 28, 32, 138 N. W. 988; or it may be issued ancillary to some other writ to cause the record to be certified up for consideration upon the inquiry instituted by such other writ. State ex rel. Fourth Nat. Bank v. Johnson, supra. In the case last cited, the supreme court of Wisconsin issued an alternative writ of mandamus upon the application of the relator, and issued a writ of certiorari, on its own motion, auxilliary to the writ of mandamus. 103 Wis. 596.

In State ex rel. Red River Brick Corp. v. District Ct. supra, the court said:

"When a proper case arises for the exercise of this power, the writ necessary to fit the case may take the nature of a command or of a prohibition, or, to enable the court to determine its character, it may be found necessary to issue a preliminary writ requiring records to be certified up, and this may be done. We are satisfied that the authorities to which reference has been made are applicable here, and that their determination of the purpose of the Constitution framers in granting this superintending control is correct. It has been so intimated in several of the cases decided by this court, to which reference has been made. Whether or not the remedy by appeal is adequate or speedy, must be determined by the exercise of the sound discretion of this court, applied to the facts in each given case."

In the cases where this court has exercised its superintending jurisdiction in reviewing orders in criminal cases, the writ directing the records to be certified up to this court was in fact a preliminary writ issued for the purpose of supplying this court with necessary information, so that it could act intelligently in the matter and determine whether some action had been taken by the lower court, justifying or requiring the exercise by this court of its superintending control and further determine what the character of the writ, if any, to be issued by this court should be.

Reference has also been made to the decisions of this court in Schwahn v. District Ct. 36 N. D. 6, 161 N. W. 566, and State ex rel.

Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545. These decisions in no manner sustain the contention of the appellant in this case.

The first case involved an order made by the district court relating to certain moneys which had been deposited as bail. No action or proceeding of any kind was pending relating to the ownership of the money. No question was raised in this court as to the propriety of the remedy; nor was there any consideration as to whether the appellate or the superintending jurisdiction of this court was invoked. However, in its opinion in the case, this court stated that the case fell within the rule announced in State ex rel. Enderlin State Bank v. Rose, 4 N. D. 319, 28 L.R.A. 593, 58 N. W. 514, and was controlled by that case. And in the case cited the writ of certiorari was issued by this court "under the power of superintending control over inferior tribunals, vested in this court by the Constitution." 4 N. D. 337.

In State ex rel. Wehe v. Frazier, there was a denial of the constitutional right of due process. In that case a public officer, who under the statute was entitled to notice and hearing, was removed from office by the governor without being afforded a hearing. In other words, the governor made an order which he had no power to make, for the statute granting the power to remove imposed as an essential jurisdictional prerequisite notice of hearing and opportunity to be heard to the officer sought to be removed. The question there presented was one going directly to the jurisdiction of the governor to make a determination of the removal proceeding. No question was involved as to whether the findings of the governor were supported by the evidence. On the contrary this court expressly recognized that that question could not be reviewed on certiorari. The court said:

"The writ will lie only if the Governor has exceeded his jurisdiction. It follows that it will not lie to review the sufficiency or the insufficiency of the evidence, or the merely erroneous orders of the Governor, if the Governor acted within his jurisdiction."

It is also contended that the decision in this case is inconsistent with Brissman v. Thistlethwaite, 49 N. D. 417, 192 N. W. 85. The contention is without merit. That case involved a question within the general jurisdiction of the district court. Upon an application to that court for a writ of certiorari to a justice of the peace, the parties appeared in person. The question of the propriety of the remedy was

raised, but afterwards withdrawn and the district court specifically requested to assume jurisdiction of and decide the controversy on the merits thereof. The decision in that case does not hold that the questions there presented were reviewable on certiorari. On the contrary the decision is rather based upon the assumption that they were not so reviewable; but that the parties by their acts transformed the proceeding into one where the district court was not limited by the provisions of § 8445, Comp. Laws, 1913. The decision in the Brissman Case would of course have been the same if no writ at all had been issued. The decision was based upon the theory that the parties to the controversy voluntarily appeared and submitted certain questions within the general jurisdiction of the district court to that court for determination. The district court had unquestioned jurisdiction of the subject-matter, i. e., power to hear and determine questions of the nature there involved (4 Words & Phrases, 3886); and this court found that upon the record submitted the parties expressly submitted themselves to the jurisdiction of the court and asked the court to determine the questions presented. In other words, a situation was presented where, not by virtue of the writ of certiorari but, by the acts of the parties a controversy within the general jurisdiction of the district court was submitted to that court for determination. That situation, however, does not exist in the case at bar. The subject-matter here, viz.: the exclusion of territory from a city, is one fundamentally legislative in character, Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023, and the legislature has said that all applications for the exclusion of territory must be addressed to and determined by the city council, or commission, of the city from which the territory is sought to be excluded, and it has vested no other body or tribunal with power to review its determination on such application.

It is further contended that the situation presented upon the record here is practically identical with that presented in Mogaard v. Robinson, 48 N. D. 859, 187 N. W. 142, and that on the authority of that case the appellant here should prevail. The case cited involved an application for the exclusion of certain territory from the city of Garrison. The case was decided by a divided court. The dissenting member was of the opinion that upon the record there presented, no want or excess of jurisdiction appeared; that the matter having been duly

presented to the city council and hearing afforded, its findings were final, and not subject to review by the courts. The majority opinion was predicated on the proposition that the question of remedy was not involved; that the parties, in effect, had agreed to submit to the court for determination the question as to the meaning of the term "sewer outlet" in chapter 32, Laws 1921. The court said:

"We do not understand that any question of procedure is involved upon this appeal, for upon oral argument respondents disclaimed any contention as to the remedy and in their brief it is stated:

"*It is plain that but one point is involved: Should the city council have excluded this tract upon the showing made. We were willing that this decision should be reviewed by Judge Nuessle, and we now submit to the judgment of the supreme court the same question.*" (Italics are ours.)

"It thus appears that the respondents are desirous of terminating the controversy through a construction of the controlling legislation applied to undisputed facts. In this state of the record we must regard the case as turning upon the meaning of the words employed in the statute, 'where a sewer outlet extends upon or over said unplatted lands,' and upon the facts adduced with reference to the character of that portion of the sewer constructed upon the petitioner's land. Counsel for the appellant contend that this language is descriptive of a sewer of any length which is used only as an outlet for the system. On the other hand, counsel for the respondent insist that it is descriptive only of that part of a sewer known as the mouth or end of the sewer, and, possibly, land lying some distance beyond the point where the contents are discharged." (48 N. D. 863, 864).

This language is self-explanatory. Whatever differences of opinion there may be as to the actual effect of the holding in Mogaard v. Robinson, supra, as applied to the facts in that particular case, the language quoted indicates that the court acted on the theory that the city council and the petitioner, in effect, had agreed to submit to the district court for determination the question of law as to the meaning of the term "sewer outlet" as contained in chapter 32, Laws 1921; and that on the appeal to this court they assumed the same attitude. In the instant case, however, a much different situation exists. In his brief on this appeal, appellant says:

"The questions for decision by the court are:

(a) Is certiorari the proper proceeding?

(b) Are the determinations of fact and law by the board of city commissioners subject to review? If so, to what extent?

The questions which appellant thus states are the first two presented on this appeal were fully discussed by counsel for the respective parties on the original oral argument, and were fully considered and decided in the former decision in this case. The questions were again fully discussed on the reargument. These questions have received our careful consideration and are determinative of this appeal. They were correctly decided in the former opinion, and that opinion will stand.

CHRISTIANSON, BIRDZELL, BURR, and JOHNSON, JJ., concur.

BRONSON, Ch. J. (further dissenting after rehearing). Now after a rehearing and long consideration, for the reargument was had on January 16th, 1923, the majority opinion, labelled a per curiam opinion, asserts its adherence to the majority opinion of the court, formerly rendered. In this per curiam opinion, now rendered after rehearing there is discussed alone a procedural question, namely, the reason why certiorari is not the proper or appropriate remedy. At the beginning, this majority opinion states that it has reconsidered the questions involved. Of course, this statement is not quite correct. The majority opinions never have considered the real questions involved. They have refused so to do although the trial court had no hesitancy nor compunctions in so doing. The proceedings had in the trial court must be first considered.

This is an appeal which seeks to review an order of the district court in certiorari proceedings. The parties stipulated that such order to show cause should be taken and considered for all purposes as a writ of certiorari. The Commission did not question, by motion to quash or otherwise, the jurisdiction of the district court or the propriety of the remedy. The Commission interposed an answer to the petition. In this answer no questions were raised concerning the propriety of the remedy. Specifically, the Commission alleged that the land involved lay wholly within the limits of the city and was surrounded on three sides by land lying wholly within the limits of the city. After hearing,

the trial court, upon the merits, found that the land involved did not come within the provisions of chap. 32, Laws 1921, in that the exclusion thereof from the limits of the city would leave the boundary of the city irregular. It accordingly ordered the petition to be dismissed. From such order the commission has appealed and now, for the first time in this court, raises the question of the propriety of the remedy.

The proceeding in the instant case is practically the same as that maintained in Mogaard v. Robinson, 48 N. D. 859, 187 N. W. 142. In that case it appears that a petition was presented to the city council of Garrison to exclude certain territory. A hearing was had and the petition denied. The trial court issued an order to show cause why a writ of certiorari should not issue. The city moved to quash the order. The trial court, after denial of the motion to quash and hearing on the merits, dismissed the order upon the ground that the tract of land involved did not come within the provisions of chap. 32, Laws 1921. An appeal was taken to this court from such order of the trial court. This court reversed the order and remanded the case with directions to enter the appropriate judgment. In that action the trial court determined the subject-matter upon the merits. As the opinion in that case indicates, the parties submitted the subject matter to this court upon the merits.

This case can be distinguished from the case at bar only in the following particular, viz.: in the former case, objection was made to the propriety of the remedy in the trial court; in the latter case such objection was for the first time raised in this court. It may further be noted that the *majority opinion in the instant case is,* in substance, practically word for word, *a copy of the dissenting opinion in Mogaard v. Robinson, supra.* Thus, practically speaking, does the dissenting opinion in Mogaard v. Robinson become the majority opinion in this case. The inconsistency of the court's position is apparent. For the first time in this court, after the parties have submitted the real questions involved in a certiorari proceeding for the decision of the trial court, one of them, to uphold that decision, presents the objection now for the first time that certiorari was not the appropriate remedy. To illustrate the position that the majority opinion now takes, a consideration of the recent cases of Brissman v. Thistlethwaite, 49 N. D. 417, 192 N. W. 90 may be had. The two

cases may be considered as one. In that case plaintiff was arrested for false advertising and for illegally representing himself as a certified public accountant. In justice's court, plaintiff, there a defendant, objected to the jurisdiction of the justice upon the ground that the complaint had not been approved by the state's attorney. This objection was overruled. The plaintiff then made an application to the district court for a writ of certiorari. The district court issued an order to show cause. The justice, by demurrer to the petition, questioned the right to issue the writ. The demurrer was overruled. A writ was thereupon ordered. In his return, the justice specifically alleged that he possessed jurisdiction in the two criminal actions; that the petitioner had an adequate remedy at law and a right of appeal from the action of the justice. Upon the hearing, the justice waived the issuance of a writ and informed the court that he had no further defense to offer. The district court found that the warrants of arrest had never been submitted to, nor approved by, the state's attorney, the attorney general, or his assistants. Accordingly, the trial judge directed the writ of certiorari to issue, restraining and enjoining further proceedings in the criminal actions before the justice. The justice appealed from the order of the district court to this court. Upon such appeal, he specifically questioned, before this court, the propriety of the remedy. This court, in affirming the order of the trial court and upholding the application of a writ of certiorari to the proceedings before the justice, held as follows: That, concerning the review on certiorari of the action of the justice, the district court has appellate jurisdiction in criminal actions tried before the justice; that, if an order by the justice had been made holding the defendant to answer, it was clear that defendant would have been entitled to be released upon habeas corpus proceedings in the district court; that the ordinary presumptions applicable to appeals apply to an appeal from a certiorari proceeding; that the appellate court will only consider the errors which are urged before it and specifically pointed out; that the review is confined *to matters or objections urged below;* that, from the proceedings had in the trial court, after the trial court had indicated its views concerning the issuance of a writ, the justice waived the issuance of a writ and stated that he had no defense to offer; that, accordingly, this court was of the opinion that the *question of the propriety of the remedy was not*

*before it;* that, further, without deciding whether the approval of a criminal complaint by a state's attorney is a jurisdictional prerequisite, a justice of the peace is not regularly pursuing his authority in the manner prescribed by law when he issues a warrant of arrest upon a criminal complaint which expressly, in another similar action, has been disapproved by the state's attorney. In the further opinion of this court, upon the petition for rehearing in that case, this court said:

"Appellant invokes the rule that certiorari lies only to review acts in excess of jurisdiction. The rule was recognized, and the statutory provisions announcing it were set forth, in the former opinion, but for reasons therein stated the rule was held not applicable in this case. In other words, we held that under the facts disclosed or inferable from the record in this case, *we are not concerned with the propriety of the remedy.* As pointed out, the district court is one of general jurisdiction. The ultimate question which gave rise to the litigation was one within the general jurisdiction of that court. And for reasons stated in the former opinion it must be assumed on this appeal that the objection first interposed by the justice of the peace to the propriety of the remedy was abandoned,—that the justice of the peace waived the issuance of a writ of certiorari and in effect asked, or at least consented, that the district court decide the entire matter in issue at said time and place. This court has repeatedly held that when a case, which involves a question within the general jurisdiction of the district court, is *presented to the district court, with either the express or tacit consent of the parties that the question so presented be determined, the question of the propriety of the remedy becomes immaterial and cannot be subsequently raised.*

"We have not, as appellant contends, held that the practice adopted in this case is the proper mode of determining the sufficiency of a criminal complaint. We have merely held that where, as here, the matter is presented to the district court, and that court is in effect asked to determine whether there is in fact and in law a criminal action pending before a justice of the peace; and the court determines that question, that a party *who has invited such decision* cannot afterwards question the propriety of the remedy utilized in the first instance in bringing this matter before the district court for determination."

But, the per curiam opinion seeks to justify the holding in these

Brissman cases by explaining that the district court through act of the parties was granted a jurisdiction. Even so, a writ of certiorari was the instrumentality used. How does such reasoning apply to the case at bar when the parties submitted to the jurisdiction of the trial court without question?

These cases cited, somewhat at length, simply illustrate the inconsistent position now taken by the majority opinion herein. If the principles applied and followed in the cases cited do not here apply, then the application of the principles in such cited cases should be directly overruled, so that the bar may not be misled through the rule of stare decisis. Assuredly, it is evident that the dissenting opinion in Mogaard v. Robinson, supra, becomes now the majority opinion in this case.

The per curiam majority opinion quotes the statute concerning the exclusion of territory from a city and further cites Mogaard v. Garrison, 47 N. D. 468, 182 N. W. 758, to the effect that where a city commission is invested with power to hear evidence and determine the existence or nonexistence of certain facts, it exercises powers judicial in nature. Then follows the deduction that the city commission has the power to deny as well as the power to grant a petition for the exclusion of territory; that in the city commission is vested the authority to ascertain whether the facts exist; that, in a sense, there is a duty incumbent upon all boards and tribunals to decide a controversy only one way in all cases where the evidence is such that reasonable men can draw only one conclusion therefrom; that where the evidence in the case is such that reasonable men can draw only one conclusion therefrom, the duty is incumbent to decide the case in favor of the party whom the law says is entitled to prevail but that the decision in such case is not an excess of jurisdiction but is an error of judgment.

Upon such logic is based the reasoning that a petition was presented; a full hearing accorded and a determination made upon the merits; that pursuant thereto it found the facts to be such as not to bring the land sought to be excluded within the provisions of the statute. In other words, upon this reasoning, the precise position is taken by the per curiam opinion that if a city commission, upon conceded and stipulated facts, concludes that black is white and that two and two make five and not four, then such conclusion is an error of judgment concerning which the courts are powerless to afford a suitor any relief. Con-

cerning this reasoning it may be well to inquire why this court does not term the action of a district court an error of judgment when he has refused to act and call in another judge to preside at a trial pursuant to the mandatory duty imposed upon him by statute. Gunn v. Lauder, 10 N. D. 389, 87 N. W. 999. Likewise, where the district court has wrongfully refused to settle a statement of the case. Kaeppler v. Pollock, 8 N. D. 59, 76 N. W. 987; Tuttle v. Pollock, 19 N. D. 308, 123 N. W. 399. Likewise, where a district court judge has not entertained a motion for new trial upon grounds of newly discovered evidence. State ex rel. Berndt v. Templeton, 21 N. D. 470, 130 N. W. 1009. Likewise, where the court, through erroneous construction of law, has not proceeded to a hearing. State ex rel. Heffron v. District Ct. 26 N. D. 32, 143 N. W. 143. Furthermore, in an early case this court quoted with approval the statement that the function of the writ of certiorari is to keep magistrates within the compass of their powers. State ex rel. Enderlin State Bank v. Rose, 4 N. D. 319, 333, 26 L.R.A. 593, 58 N. W. 514. Of course, this holding applies to inferior boards and tribunals as well as to inferior courts as this court has frequently held. State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 547. Hence, under such reasoning, where is there any authority under certiorari for this court to review an order of a district court summarily made requiring a sheriff to deliver certain property seized under a warrant of attachment? State ex rel. Enderlin State Bank v. Rose, supra. Again, whence proceeds the authority for this court in a certiorari proceeding to review an abuse of discretion by a trial court? Murphy v. District Ct. 14 N. D. 542, 105 N. W. 728, 9 Ann. Cas. 170; Zinn v. District Ct. 17 N. D. 135, 114 N. W. 472; State v. Winchester, 19 N. D. 756, 122 N. W. 1111; Lowe v. District Ct. 48 N. D. 1, 181 N. W. 92. But with reference to these cases where the supreme court used certiorari to aid it in the exercise of its power of superintending control, the per curiam opinion disposes of the same by the mere statement that they have no application at all because the power so exercised is the constitutional power of superintending control.

What is the constitutional power of superintending control? The Constitution provides that the supreme court shall have a general superintending control over all inferior courts *under such regulations and limitations as may be prescribed by law.* N. D. Const. § 86. The

statute provides that the supreme court, concerning its jurisdiction of superintending control, may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction. Comp. Laws 1913, § 7339. Further, that a writ of certiorari may be granted by the supreme court when inferior courts, officers, boards or tribunals have exceeded their jurisdiction and there is no appeal, nor, in the judgment of the court, any other plain, speedy and adequate remedy. and also when in the judgment of the court it is deemed necessary to prevent a miscarriage of justice. Chap. 76, Laws 1919 amending § 8445, Comp. Laws 1913. Also, that the review upon the writ of certiorari cannot be extended further than to determine whether the inferior court, tribunal, board or officer has regularly pursued its authority. Comp. Laws 1913, § 8453. The supreme court has a threefold jurisdiction: (a) An appellate jurisdiction; (b) an original jurisdiction; and (c) a jurisdiction of superintending control. State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234; State ex rel. Lemke v. District Ct. 49 N. D. 27, 186 N. W. 381, 385. This threefold jurisdiction comprehends the entire jurisdiction of the supreme court. It has an appellate jurisdiction only except as the constitution otherwise provides. N. D. Const. § 86. Its original jurisdiction is prescribed by the constitution. N. D. Const. § 87. State ex rel. Moore v. Archibald, supra. Its jurisdiction of superintending control is under such regulations and limitations as may be prescribed by law. N. D. Const. § 86. The writ of certiorari, accordingly, whether issued or considered by the supreme court, must be considered by it either in the exercise of its original, appellate, or superintending jurisdiction. The supreme court may issue, as it has frequently issued, the writ of certiorari in the exercise of its original or superintending jurisdiction. If it issues a writ of certiorari in the exercise of its superintending control it must so issue the same under such regulations and limitations as the legislature has prescribed. N. D. Const. § 86.

The majority opinion asserts that certiorari cases under the power of superintending control have no application because it is the power of superintending control. Necessarily, the majority opinion must premise such a distinction in order to harmonize its decision with former decisions of this court. It quotes the statute, § 7339, Comp. Laws 1913. to the effect that the Supreme Court in its superintending con-

trol over inferior courts may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction. It draws the conclusion that neither the Constitution nor the statute purports to name the writs which the court may issue in the exercise of its superintending jurisdiction or to prescribe the functions of any writ which may be issued. In answering this conclusion it must first be noted that the statute quoted, § 7339, provides that the Supreme Court *"in the exercise of its appellate jurisdiction and its superintending control over inferior courts,* may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction." In other words, the statute upon which the majority opinion bases a distinction is made applicable to the supreme court both in the exercise of its appellate jurisdiction and its power of superintending control. If the statute, § 8445, prescribing definitional limitations for the writ of certiorari apply to the appellate jurisdiction mentioned in § 7339, it applies also to the power of superintending control. Thus have the cases heretofore in this court consistently applied the statutory prescription concerning writs of certiorari whether the subject-matter concerned the exercise of an appellate jurisdiction or the power of superintending control.

In the first case of certiorari in this state under the power of superintending control, this court specifically stated that the writ was issued under its power of superintending control. It quoted the language of the statute that the writ may be granted "when there is no writ of error or appeal nor in the judgment of the court any other plain, speedy and adequate remedy." The court obviated the objection made that there was another remedy available by holding that it was not speedy. It drew no distinction between the use of certiorari in the exercise of appellate jurisdiction and in the power of superintending control. State ex rel. Enderlin State Bank v. Rose, 4 N. D. 319, 332, 337, 26 L.R.A. 593, 58 N. W. 514. In State ex rel. Clyde v. Lauder, 11 N. D. 136, 90 N. W. 564, an original writ of certiorari was issued against a district judge. The court specifically quoted the statute to the effect that a writ of certiorari might be invoked where inferior courts or tribunals have exceeded their jurisdiction. In Schafer v. District Ct. 21 N. D. 476, 131 N. W. 240, an original application was made for a writ of certiorari against a district judge. The court quashed the temporary writ upon the ground that, pursuant to the statute, the applicant had

another and more speedy remedy. In this case the court further notes that the subject-matter was already before the court upon appeal and another remedy was available to the petitioner. In Albrecht v. Zimmerly, 23 N. D. 337, 342, 343, 136 N. W. 240, an original application for a writ of certiorari against a district court was made. The court quoted the statutory provision concerning the issuance of writs of certiorari. It held, "Petitioner's right to the writ must be conferred by this statute." Pursuant to the statute, the application was denied. In State ex rel. Noggle v. Crawford, 24 N. D. 8, 138 N. W. 2, an original application for certiorari was made to review an order of the district court. The court said that under the plain language of the statute a writ of certiorari may be granted only in case where such inferior courts, officers, boards, or tribunals have exceeded their jurisdiction. The writ was denied. To the same effect see Squire v. County Ct. 25 N. D. 468, 141 N. W. 1135 where an original writ of certiorari was sought against a county judge. Likewise, State ex rel. Brunette v. Pollock, 35 N. D. 430, 160 N. W. 511.

Now in considering the "change of venue" cases, where original writs of certiorari were involved in the exercise of a superintending control and the question of an abuse of discretion was made determinative concerning the issuance of the writ, it will be noted that in the very first case the question considered was whether the trial court exceeded his discretion, that is, his jurisdiction, thereby recognizing the application of the statute. Murphy v. District Ct. 14 N. D. 542, 105 N. W. 728, 9 Ann. Cas. 170. In the next case, the court said that "from the general tenor of the opinion in that former it was held that if the district court had exceeded its jurisdiction or authority and abused its discretion by transferring the trial of a case to a too remote county, the abuse of discretion or excess of jurisdiction might be reviewed by certiorari. The members of this court who were not then members of the court do not wish to be considered as indorsing the doctrine that a writ of certiorari is a proper remedy in such a case. In this case no question is raised as to the propriety of the writ." Zinn v. District Ct. 17 N. D. 135, 140, 114 N. W. 472. In the next case, State v. Winchester, 19 N. D. 756, 122 N. W. 1111, an original writ of certiorari was again entertained concerning change of venue granted by a trial court and denied because no abuse of discretion was shown. In

the last case, Lowe v. District Ct. 48 N. D. 1, 181 N. W. 92, an orig-
inal writ of certiorari was again involved as in the three cases above
named. The court, through the majority opinion, found an abuse of
discretion. Two members of the court, who then dissented and who
now are signers of the majority opinion herein involved dissented not
upon the ground that certiorari was not the appropriate remedy but
upon the ground that no abuse of discretion was shown. Specifically,
Mr. Justice Christianson, in his dissent emphasized the constitutional
provision that the power of superintending control is subject to the
condition that it is to be exercised under such regulations and limita-
tions as may be prescribed by law. N. D. Const. § 86.

Now, the constitution specifically grants to the supreme court the
power to issue writs of certiorari. Necessarily, it must issue these
writs in the exercise of its original, superintending, or appellate juris-
diction. The question of its use in the exercise of an original jurisdic-
tion proper is not herein concerned. When used for the purpose of
exercising superintending control it is subject to the statutory provi-
sions hereinbefore discussed. Otherwise, it may be used only in the
exercise of an appellate jurisdiction. In the cases cited as illustrative
of instances of superintending control, the writ of certiorari used was
an original writ, not as ancillary to an appeal or writ of error. In
fact, the majority opinion is founded upon the conception that the writ
of certiorari in this state is statutory, sui generis, and unlike certiorari
at the common law. Hence, the discussion that has preceded is to dem-
onstrate that the cases cited involved the exercise of a superintending
control through original writs of certiorari which were subject to and
dependent upon the statutory prescription. If the statutory definition
of certiorari does not circumscribe the use of the writ in the original
exercise of an appellate or superintending jurisdiction, then the rea-
soning of the majority opinion which relies upon the statute alone
must fall; for district courts as well as the supreme court may issue
writs of certiorari and the district court did issue a writ of certiorari
in the case at bar from which the appeal herein has been taken.

Accordingly, we are concerned with the statutory remedy of certi-
orari and its application. The majority opinion has given a very
limited field of operation to the term "excess of jurisdiction."

In accordance with the statute and pursuant to the constitutional

powers and statutory rights of the courts in certiorari proceedings, the term "excess of jurisdiction" necessarily must be considered.

This court has frequently stated that the writ will only lie where want or excess of jurisdiction appears. Albrecht v. Zimmerly, 23 N. D. 337, 343, 136 N. W. 240; State ex rel. Noggle v. Crawford, 24 N. D. 8, 11, 138 N. W. 2; State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545. Thus, the statute prescribes. Comp. Laws 1913, § 8445; Laws 1919, chap. 76. This statute has existed since territorial days. The Constitution grants to the supreme and district courts original jurisdiction to issue writs of certiorari. N. D. Const. §§ 87, 103.

It has been said that excess of jurisdiction is difficult, even impossible to define. 11 C. J. 103.

Section 8453, Comp. Laws 1913 provides that in a certiorari proceeding the review can not be extended further than to determine whether the inferior court, tribunal, board, or officer has regularly pursued its authority. This court has held that our statute concerning certiorari is sui generis; that our statutory certiorari is not only unlike the common law but equally is unlike the law of any other state; that its office is not confined to a review of judicial or quasi-judicial proceedings but extends to every case where, in the language of the statute, inferior courts, tribunals, etc., have exceeded their jurisdiction; that, in view of the express language of the statute, the supreme and district courts have power to examine the acts of such tribunals as are exercising administrative, legislative, judicial and other functions, *for the sole purpose of ascertaining whether they have proceeded according to law.* State ex rel. Johnson v. Clark, 21 N. D. 517, 528, 131 N. W. 715.

In the recent case of State ex rel. Mayo v. Thursby-Butte Special School Dist. 45 N. D. 555, 178 N. W. 788, this court said that the last cited case establishes a broad ground for the remedy of certiorari but that the court is not disposed in any manner to qualify the holding on this point for it manifestly follows from the language of the statute. It is not necessary to advert to the scope of certiorari at the common law. 40 Am. St. Rep. 29, note. It is sufficient to state that it was and is an extraordinary remedy to supply defects in the administration of justice and to prevent injustice. 11 C. J. 8. In some respects our statutory certiorari is more extensive than that known at the common

law. It may be issued to an officer whose term of office has expired. Comp. Laws 1913, § 8449. It is not limited to judicial or quasi-judicial proceedings.

Although our statutory certiorari is peculiar, nevertheless, reference may be and has been made to the common law to better comprehend its purposes and scope. See Re Evingson, 2 N. D. 184, 193, 33 Am. St. Rep. 768, 49 N. W. 733.

The majority opinions have referred to, and quoted from, decisions in California by reason of the similarity of the statutory provisions concerning certiorari. In the McClatchy Case, 119 Cal. 413, 39 L.R.A. 691, 51 Pac. 696, from which an extensive quotation is made in the per curiam opinion, the court said, as quoted in the per curiam opinion "any departure from those recognized and established requirements of law, however close the apparent adherence to mere form the method of procedure is, which has the effect to deprive one of a constitutional right, is as much an excess of jurisdiction as where there exists an inceptive lack of power. 'The substance and not the shadow determines the validity of the exercise of the power.'" Pray, in substance, wherein is the difference between the refusal to hear facts and the refusal to accept facts? In the later case of Younger v. Superior Ct. 136 Cal. 682, 687, 69 Pac. 485, quoted in the per curiam opinion, a certiorari proceeding was involved. The appellate court repeated the language hereinbefore quoted concerning excess of jurisdiction. It annulled the order. The per curiam opinion further quotes Schwarz v. Superior Ct. 111 Cal. 106, 112, 43 Pac. 580, where a certiorari proceeding was again involved. The quotation contained in this per curiam opinion is requoted herein:

"The objection that we are not at liberty to go beyond the recitals or findings in the judgment itself, in reviewing the action of the court below, is not well taken. While the writ of review is not a writ of error, and is not a means by which, as upon appeal, the mere manner of conducting the proceedings, the rulings of the court upon questions of evidence, and other matters within the jurisdiction, involving the merits, however erroneous they may be, can be reviewed, it is, nevertheless, a means by which *the power of the court in the premises can be inquired into;* and for this purpose the review extends, not only to the

whole of the record of the court below, but even to the evidence itself, where necessary to determine the *jurisdictional* fact."

Pursuant to the reasoning of the majority opinion these cases are only authority in a certiorari proceeding where the mere question of power is concerned. But isn't it a question of power upon the record in this case? Must it be held that this question of power can not be investigated where a city commission has ordered a territory to be detached which, upon the conceded facts and in accordance with the statute, may not be detached? And vice versa, has a city commission power to deny a detachment when, pursuant to the conceded facts, the statute states that it is its mandatory duty so to do?

But, it is asserted in this per curiam opinion that the statute does not require the city commission to preserve the evidence adduced upon the hearing, however, in this case all of the evidence is here. It has been preserved. Another statute requires, in a certiorari proceeding, that the inferior court or tribunal, certify fully a transcript of the record and proceedings had. Comp. Laws 1913, § 8448.

Again, it is said that the appellant, who was the petitioner before the city commission, presented his application to the commission. He was accorded a hearing and no complaint was made of any act of the commission until it made its decision on the merits. Surely, what else could the petitioner have done? It was his duty to make such presentation, pursuant to the statute, and it was also the duty of the commission to proceed as the statute prescribes. Again, they say that the petitioner submitted to the jurisdiction of the city commission. Truly, what may be said of this argument when it is seen that the commission in the trial court submitted this matter to the jurisdiction of the trial court without questioning in any manner the procedure.

In a note to 40 Am. St. Rep. 35, it is said: "It is a fair summary of the decisions to say that in those states in which the evidence may be brought before the superior court upon certiorari that court may examine it, not for the purpose of determining the credibility of witnesses or the weight to be given conflicting testimony, but solely for the purpose of determining whether, from competent evidence before it, the decision of the inferior court is sustainable, and, if so, such decision cannot be set aside as against, or not supported by, the evidence, and,

on the other hand, if there was no competent evidence to sustain such decision it must be annulled."

In 11 C. J. 105, it is stated:

"The writ will not lie to review errors or mistakes in matters of discretion, where the court has acted within its discretion and where there has been no disregard by the court of the procedure prescribed by law; but if the record show nonconformity to legal requirements, the 'writ will not be refused on this ground. However, it has been held in some jurisdictions that, if the discretion has been abused it can be reviewed on certiorari."

In the light of these considerations it is proper to consider the action that this court has taken in certain cases.

In Murphy v. District Ct. 14 N. D. 542, 105 N. W. 728, 9 Ann. Cas. 170, certiorari proceedings were had in this court to review an order of the district court granting a change of venue in a criminal case. The question presented was whether the presiding judge exceeded his discretion in sending the case to a particular county. The majority of the court considered and found that the trial court did not abuse its discretion. Judge Engerud, in a dissenting opinion, found that the court did abuse its discretion and stated that the proceeding was one which directly challenged the propriety of the order for a change of venue on the ground that the district judge arbitrarily and without any reasonable cause sent the case to Cass county.

In Zinn v. District Ct. 17 N. D. 135, 114 N. W. 472, certiorari proceedings again were initiated in this court concerning an order of the district court granting a change of venue. The sole question presented was whether the district court acted within its discretion in transferring the trial of the action to a certain county. This court found that there was no abuse of discretion. In this case no question was raised concerning the propriety of the writ. The court did not approve of the doctrine that a writ of certiorari was a proper remedy, nevertheless, by reason of no question being raised it did determine that there was no abuse of discretion.

In State v. Winchester, 19 N. D. 756, 122 N. W. 1111, certiorari proceedings were initiated in this court involving an order of the trial court granting a change of venue. This court held that the granting of such application for a change of venue was a matter within the sound

discretion of the trial court and that its rulings would not be disturbed except for an abuse of discretion. In this proceeding the court found that there was no abuse of discretion.

In Squire v. County Ct. 25 N. D. 468, 141 N. W. 1135, an application for a writ of certiorari, to review the action of a county court in granting a change of venue, was denied because the plaintiff had an adequate remedy by appeal.

In Lowe v. District Ct. 48 N. D. 1, 181 N. W. 92, certiorari proceedings again were had to review an order of the district court granting a change of venue to a certain county. The question of the trial judge's discretion was again considered. A place of trial designated by the trial court was ordered changed. Neither the majority opinion nor the dissenting opinions questioned the propriety of the remedy.

In State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545, certiorari issued because the governor did not accord to the petitioner, upon review of the record, a right to be heard.

In Schwahn v. District Ct. 36 N. D. 6, 161 N. W. 556, a writ of certiorari was issued to a district judge and clerk for the reason that the trial judge had irregularly and in excess of his jurisdiction ordered money in the possession of a defendant in a criminal action to be turned over to the clerk.

These cases are illustrative of certiorari proceedings where this court has entertained jurisdiction, either originally or upon appeal, and has considered the merits for purposes of ascertaining whether the lower tribunal, board or officer has regularly proceeded according to law.

May it be doubted that in some of these cases, abuse of discretion has been considered a failure to regularly proceed according to law and therefore an excess of jurisdiction? May it be doubted that this court has considered arbitrary action by a tribunal, board or officer, whether acting in a judicial, quasi-judicial, legislative or executive capacity, to be a failure to regularly proceed according to law and therefore an excess of jurisdiction?

In the case at bar there was no right of appeal from the decision of the City Commission: It is not suggested that any other remedy is available. Mr. Justice Christianson, in a dissenting opinion in Cofman v. Ousterhous, 40 N. D. 390, 412, 18 A.L.R. 219, 168 N. W. 826, has quoted with approval the following: "It is a general rule of the

common law that when a new jurisdiction is created by statute and the court or officer exercising it proceeds in a summary way or in a course not according to the common law, and a remedy for the revision of its exercise is not given by the statute creating it, certiorari will lie. 4 Enc. Pl. & Pr. 73.

Want of jurisdiction must be distinguished from excess of jurisdiction. 11 C. J. 103. This court has pointed out a path of distinction, in certiorari proceedings. It has recognized that the statute in its prescription has connected the phrase "excess of jurisdiction" with a failure to proceed regularly according to law. Comp. Laws 1913, §§ 8445, 8453. In other words, although there may be no want of jurisdiction in a certiorari proceeding, yet, acts in excess of jurisdiction not consonant with law may appear in the course thereof.

In the instant case the law requires the city commission, upon a certain petition and upon certain facts in support thereof at a hearing, to detach territory of a certain character. No discretion is granted to the commission when the requisite facts are presented. A mandatory duty is imposed upon the commission to detach the territory, not pursuant to their findings but pursuant to the requisite facts. The ends, neither of justice nor of consistency, are promoted by the holding in the majority opinions. These opinions base their holding entirely upon a procedural question first raised in this court, manifestly, contrary to the holdings in the Brissman Cases and in Mogaard v. Garrison and contrary to usual rules of practise. The writ of certiorari is given a refined and technical application. No attention is paid to the amendment of § 8445, Comp. Laws 1913, enacted in 1919, which provides in addition that a writ of certiorari may be granted when, in the judgment of the court, it is deemed necessary to prevent a miscarriage of justice. Accordingly, upon the facts in this case, I am of the opinion that it is the duty of this court to investigate the facts and to decide the questions involved upon the merits the same as the trial court did.